IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19-CR-9-GKF |
| HONGJIN TAN, | |
| Defendant. | |

## ORDER

Before the court is the Amended Motion for Bill of Particulars [Doc. 26] of defendant Hongjin Tan. For the following reasons, the motion is granted.

### I. Background

**A. The Criminal Complaint**

On December 20, 2018, the government filed a criminal complaint against Mr. Tan, along with a supporting affidavit signed by James Judd, a Special Agent with the Federal Bureau of Investigation. [Doc. 1]. According to the affidavit, Mr. Tan is a citizen of The People's Republic of China. [Doc. 1, p. 2 ¶ 7]. He received a Bachelor of Science Degree in Physics from Nanjing University in Nanjing, China, and a Master's Degree and Doctorate Degree from the California Institute of Technology in Pasadena, California. [*Id.*, p. 3 ¶ 8]. In April 2017, he was hired as a research engineer in the battery development group of a large international corporation, referred to as "Company A" in the affidavit. [*Id.*, p. 2 ¶¶ 3, 7]. Mr. Tan was responsible for research and development of Company A's battery program operation, with the purpose of developing battery technology using Company A's proprietary processes. [*Id.*, p. 3 ¶ 7]. Company A sold and shipped, and intended to sell and ship, a "Research and Development Downstream Energy Product," referred to in the affidavit as "Product A." [*Id.*, p. 2 ¶ 5].

Citing information provided by Company A, the affidavit further states that, on December 12, 2018, Mr. Tan contacted his supervisor, advised he was resigning from Company A, and gave his two weeks' notice. [*Id.*, p. 3 ¶ 10]. He told his supervisor that he did not currently have a job offer, but was negotiating with a few battery companies in China. [*Id.*]. Mr. Tan's resignation prompted Company A to revoke his access to company systems and to conduct a review of his computer activity. [*Id.*, p. 3 ¶ 11]. That review confirmed that Mr. Tan had accessed hundreds of files, including research reports. [*Id.*, p. 3 ¶ 12]. The reports included not only how to make Product A, but also Company A's plans for marketing Product A in China and in cell phone and lithium-based battery systems. [*Id.*]. These files included information that Company A considers to be trade secrets and outside the scope of Mr. Tan's employment. [*Id.*]. The review revealed Mr. Tan downloaded restricted files to a personal thumb drive. [*Id.*]. His supervisor confirmed that nothing in the downloaded files was within Mr. Tan's area of responsibility and that Mr. Tan did not have a work-related need to access or download the restricted files. [*Id.*]. Based on that information, Company A officials escorted Mr. Tan from Company A property and barred him from returning. [*Id.*, p. 3 ¶ 13].

Later that day, Mr. Tan sent a text message to his supervisor stating that he had "a memory disk" containing "lab data" and "papers/reports." [*Id.*, p. 4 ¶ 15]. Mr. Tan inquired about the best way of handling the information and whether he could still read the papers/reports. [*Id.*]. At his supervisor's request, Mr. Tan returned the flash drive to Company A. [*Id.*, p. 4 ¶¶ 16–17]. Upon reviewing the drive, Company A determined that it contained research documents that would have a tremendous impact to Company A in terms of technological and economic loss if they were shared or given to a competing company. [*Id.*, p. 4 ¶ 18]. The review further revealed that the files were deleted on December 11, 2018, the day before Mr. Tan's resignation. [*Id.*, p. 4 ¶ 19].

The affidavit alleges additional facts pertaining to Mr. Tan's contacts with a competitor of Company A, records of Mr. Tan's foreign travel, and Company A's protection of its trade secrets. [*Id.*, pp. 5–8].

**B. Subsequent Proceedings**

Mr. Tan initially appeared on December 20, 2018, and has been detained since that time. [Doc. 5]. Magistrate Judge Jody F. Jayne held a detention hearing on December 28, 2018, and a preliminary hearing on January 3, 2019, during which FBI Special Agent Jeremy Sykes testified on direct and cross-examination. [Doc. 10; Doc. 15; Doc. 26-1; Doc. 26-2].

On January 16, 2019, a grand jury returned an Indictment charging Mr. Tan with three counts. [Doc. 18]. Count One of the Indictment alleges Theft of Trade Secrets, in violation of 18 U.S.C. § 1832(a)(1). Count Two alleges Unauthorized Transmission of Trade Secrets, in violation of 18 U.S.C. § 1832(a)(2). Count Three alleges Unauthorized Possession of Trade Secrets, in violation of 18 U.S.C. § 1832(a)(3). Each count recites the same factual allegations:

> From on or about September 1, 2018, through on or about December 13, 2018, in the Northern District of Oklahoma and elsewhere, the defendant, HONGJIN TAN, with the intent to convert trade secrets, specifically, information pertaining to methods for developing a particular Research and Development Downstream Energy Market Product known to the Grand Jury, that are related to products and services used in and intended for use in interstate and foreign commerce, to the economic benefit of persons other than the trade secrets' owner, a company known to the Grand Jury, and knowing and intending that the offense will injure any owner of those trade secrets, knowingly did [commit the elements of the offense], in violation of [the relevant statutory provision].

[Doc. 18, pp. 1–3].

On February 4, 2019, defendant filed the instant motion. Thereafter, the government filed a response opposing the motion, and defendant filed a reply. This matter is set for pretrial conference on March 5, 2019.

## II. Legal Standard

Generally, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." FED. R. CRIM. P. 7(c)(1). If a defendant seeks more definite information about the charges against him, the remedy is to file a motion for a bill of particulars. *See United States v. Doe*, 572 F.3d 1162, 1176 (10th Cir. 2009). Pursuant to FED. R. CRIM. P. 7(f), a defendant "may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." A district court has broad discretion in deciding a motion for bill of particulars. *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir. 1992).

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Higgins*, 2 F.3d 1094, 1096 (10th Cir. 1993) (quoting *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988)). A bill of particulars is not, however "a discovery device." *Dunn*, 841 F.2d at 1029. A defendant "is not entitled to notice of all of the *evidence* the government intends to produce, but only the *theory* of the government's case." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (quoting *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992)); *see also Doe*, 572 F.3d at 1176. "A bill of particulars is not necessary if the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial." *Ivy*, 83 F.3d at 1281 (quoting *Levine*, 983 F.2d at 167).

## III. Discussion

Defendant argues that a bill of particulars is necessary to enable him to prepare his defense and to avoid unfair surprise at trial. Specifically, he seeks an order requiring the government "to set forth its theory as to whether it claims the entire manufacturing process and entire battery, with

4

all subset components, was proprietary and trade secret, or some subset of the process and subcomponents of the battery are trade secret(s)." [Doc. 26, p. 15]. Defendant further argues that, if the government claims some subset of the process and subcomponents of the battery are trade secrets, it should be required "to delineate which aspects of the manufacturing process, and which components of the battery are alleged to be proprietary and which are not, and what specific files or other media possessed by Mr. Tan are alleged to contain such information." [*Id.*]. Defendant contends the need for a bill of particulars is heightened by the fact that the government provided no discovery at the time of arraignment and no discovery as of the filing of the instant motion. [Doc. 26, p. 6].

To sustain a conviction for theft of trade secrets under 18 U.S.C. § 1832, the government must prove that the information at issue was a "trade secret." *See United States v. Wen Chyu Liu*, 716 F.3d 159, 169 (5th Cir. 2013). For purposes of 18 U.S.C. § 1832, "trade secret" is defined by statute as follows:

> [T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

In preparing for trial, defendant is entitled to know what information the government alleges to be "trade secrets," so that he has an opportunity to challenge whether that information meets the statutory definition. The Indictment describes the alleged trade secrets in extremely vague terms: "information pertaining to methods for developing a particular Research and Development Downstream Energy Market Product known to the Grand Jury . . . ." [Doc. 18, p. 1]. Based on the testimony of the FBI Special Agent at the preliminary hearing, it appears that the alleged trade secrets relate to a process of defendant's former employer for manufacturing batteries or battery components. *See* [Doc. 26-1, p. 8, Tr. 10:17–11:15]. Presumably, many aspects of manufacturing a battery or battery component are not unique to defendant's former employer, but generally known and thus not trade secrets. *Cf. FMC Corp. v. Cyprus Foote Mineral Co.*, 899 F. Supp. 1477, 1481 (W.D.N.C. 1995) (manufacturer failed to show its processes for the production of battery-quality lithium metals were trade secrets). Defense counsel's ability to prepare for trial, potentially including retention of expert witnesses, is likely to be frustrated without knowing more about the alleged trade secrets at issue. The court finds and concludes that, under the circumstances, the description of the alleged trade secrets in the Indictment is too vague to enable defendant to prepare adequately for trial and to avoid prejudicial surprise.

In opposing the motion, the government asserts that it is preparing "voluminous" discovery, including over four terabytes of electronically stored information. [*Id.*, pp. 4–5]. A hearing before Magistrate Judge Frank H. McCarthy is set for March 1, 2019, on the government's Motion for General Protective Order [Doc. 29] and Motion for Trade Secret Protective Order [Doc. 30]. The government asserts that its discovery will provide the details that defendant seeks through the filing of the instant motion. [Doc. 31, p. 5]. The court is unconvinced, however, that the volume of the government's anticipated production will resolve entirely the concerns identified in defendant's

motion for a bill of particulars, as defendant must still try to ascertain what information, according to the government, constitutes a trade secret. *Cf. United States v. Connolly*, No. S1 16-CR-00370 (CM), 2017 WL 2537808, at *6 (S.D.N.Y. May 24, 2017) (directing government to file bill of particulars where voluminous discovery, without further particularization, was insufficient to allow defendants to prepare a defense and avoid unfair surprise).

Accordingly, the court concludes that the government shall be required to provide a bill of particulars in this case to ensure that defendant has sufficient notice of the charges to allow him to prepare his defense and to minimize surprise at trial. The bill of particulars need not explain the alleged trade secrets in exhaustive detail, nor must it meet the exacting specificity requested by the defendant, but it should describe the alleged trade secrets with the specificity necessary to provide—in conjunction with the government's discovery productions—an adequate opportunity for defendant to prepare his defense.

### IV.  Conclusion

WHEREFORE, defendant's Amended Motion for Bill of Particulars [Doc. 26] is granted. On or before March 4, 2019, the government shall file a bill of particulars describing with greater specificity the alleged trade secrets identified in the Indictment. The government may file the document under seal if filing publicly would risk revealing confidential or commercially sensitive information. If filed under seal, the document shall not be used or disseminated for purposes other than those related to the prosecution and defense of this case.

IT IS SO ORDERED this 26th day of February, 2019.

GREGORY K. FRIZZELL, CHIEF JUDGE