IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,       )
                             )
          Plaintiff,     )
                             )
-vs-                   )  No. 19-CR-009-GKF
                             )
HONGJIN TAN,            )
                             )
          Defendant.    )


TRANSCRIPT OF PRETRIAL HEARING

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**

**UNITED STATES DISTRICT JUDGE**

OCTOBER 7, 2019


A P P E A R A N C E S


**Joel-lyn A. McCormick,** Assistant U.S. Attorney, 110 West Seventh Street, Suite 300, Tulsa, Oklahoma, 74119, attorney on behalf of the Plaintiff;

**Ryan A. Ray**, Attorney at Law, Norman, Wohlgemuth, Chandler, Jeter, Barnett & Ray, 401 South Boston Avenue, Suite 2900, Tulsa, Oklahoma, 74103, attorney on behalf of the Defendant.


REPORTED BY:      BRIAN P. NEIL, RMR-CRR
                    United States Court Reporter

1       Monday, October 7, 2019

2                    * * * * *

3       **DEPUTY COURT CLERK:**   This is Case No. 19-CR-009-GKF,

4   United States of America v. Hongjin Tan.   Counsel, please state

5   your appearances for the record.

6       **MS. MCCORMICK:**   Joel-lyn McCormick and Matthew

7   McKenzie on behalf of the United States.

8       **THE COURT:**   Good afternoon.

9       **MS. MCCORMICK:**   Good afternoon, Your Honor.   Ryan

10  Ray here on behalf of Hongjin Tan.   Mr. Tan is present in

11  custody in the court today.

12      **THE COURT:**   Good afternoon.   We have at least four

13  issues, I think, we need to discuss or at least you need to

14  bring me up to speed on.

15      The first has to do with the defendant's recent brief

16  that was filed September 30th at docket No. 127.   Does the

17  government wish to respond?   I'd encourage you to do so because

18  it raises some really interesting issues.

19      **MS. MCCORMICK:**   Your Honor, several weeks ago the

20  United States provided the defense with a draft trial

21  protective order.   We shared that with counsel.   He did provide

22  a red-line copy to the United States and we have since provided

23  a reply.   I believe as of this morning, the parties have

24  reached an agreement regarding a proposed trial protective

25  order for the court's consideration.

1        THE COURT:   If you would sketch it out for me so I

2   understand where that agreement is.

3        MS. MCCORMICK:   Yes, Your Honor.  May I provide the

4   court with a draft copy?

5        THE COURT:   Please.

6        MS. MCCORMICK:   Your Honor, as has been referenced

7   in some of our prior proceedings, one of the biggest concerns

8   was making sure there was a presentation that allowed for

9   thorough direct and cross-examination while still protecting

10  trade secret materials.  And so what the parties have agreed --

11  or are proposing is that in reference to trade or

12  trial-protected materials, that those materials be identified

13  prior to the trial.  I think from the government's perspective,

14  that will be easy to do.

15       Additionally, we are proposing that the documents not

16  only be numbered as exhibits but also that the pages and the

17  lines of the trade secret materials be numbered so that

18  counsel, witnesses, and the court, should the court have to

19  direct attention to a particular exhibit and language contained

20  therein, we can reference the page and line number as opposed

21  to extensively referencing the substantive language within the

22  document.

23       THE COURT:   All right.  And you all have both agreed

24  before that any such documents not be displayed on these

25  monitors to the gallery; correct?

1    **MS. MCCORMICK:**  Yes, yes, Your Honor.  And one point

2    of clarification that we haven't finally discussed with

3    counsel, but we would propose and would offer staff to make

4    this happen, is to prepare notebooks for jurors that contain

5    those trade secret documents as well so they're not strained to

6    review the materials from the monitors, which they will be able

7    to see, but we'll also prepare notebooks if that's helpful to

8    the jurors' understanding or ability to follow the documents.

9    **THE COURT:**  Any objection to that approach?

10   **MR. RAY:**  No, Your Honor.  Our revision was to

11   paragraph 6(b) of what the government had proposed.  I think

12   with what we submitted, Your Honor, that we would recognize the

13   propriety of not making extensive quotations so long as we can

14   refer to documents and to portions of documents and summarize

15   them.  As we've said here, we have no problem not referring to

16   numbers, data points, those type of things, that I think would

17   strike at the -- at the heart of the issue.  I think that is a

18   reasonable position and we have no objection to proceeding as

19   revised in paragraph 6(b) with what I sent to Ms. McCormick.

20   **THE COURT:**  All right.  I'm just imagining in my

21   mind how this will play.  And at some point, if you take the

22   position, as you've represented to the court, that some of

23   these materials are not trade secrets, obviously your expert

24   has to explain why they are not.  Won't this entail a little

25   bit of walking of tightropes to try to avoid getting into the

1    substance?

2         **MR. RAY:**   I think here's what I would say to that,

3    Your Honor.

4         Obviously, some of these reports are pretty lengthy,

5    and so it's not going to, I don't think, serve our interest to

6    quote -- to just read line after line after line.   But I think

7    with what we've proposed, being able to refer to titles and

8    titles of even sections, that we could say, well -- so I could

9    talk to my expert and say, "Mr. Adams, you see the information

10   on page 7 in the section, you know, entitled 'temperatures,'

11   where is that also found," then he could reference potentially

12   public sources.   I don't think we're thereby quoting from the

13   actual document, but he can explain why his beliefs and

14   opinions are what they are without making quotations from these

15   documents themselves.

16        **THE COURT:**   Terrific.   I'm glad you all have been

17   able to work that out.

18        The second and third issues pertain to the outstanding

19   motions, the first at docket No. 93.   Is that moot or are there

20   still issues that the court needs to resolve?   And this is

21   defendant's second motion for issuance of subpoena duces tecum.

22   I know you were working on resolving that matter between

23   yourselves.

24        **MR. RAY:**   Your Honor, we have received as recently

25   as Friday an additional production from counsel for Phillips

1    66.   I actually responded to him on Saturday with a letter

2    regarding what I think are still outstanding.  I believe, Your

3    Honor, as it specifically relates to the second motion, the

4    thing I think is still outstanding, the production on the

5    4th was a redacted sample of a single agreement with a single

6    customer.  And so I have written back to counsel -- and that's

7    Mr. Rosen with the Norton Rose Fulbright firm -- and have

8    identified to him that we need to know at least that this type

9    of language was in effect with all of the customers that are at

10   issue in these reports.

11        And so I still need -- he hasn't responded yet -- and I

12   don't want to fault him too greatly for that, Judge -- but to

13   say I don't know that a sample of a single agreement is

14   adequate when there's, I think, a handful of as many as ten

15   customers and I don't know that every customer has the same

16   language.  So I'm still waiting to hear from him on that.

17        And we actually also, Judge, still have some issues

18   with them on the first subpoena that I also addressed in that

19   correspondence to Mr. Rosen.  But as it specifically relates to

20   docket No. 93, I think the confidentiality agreements issue,

21   we've had a partial production but not a complete one.

22            THE COURT:  All right.  So correct me if I'm wrong,

23   but the items that were still outstanding the last time we got

24   together were items c, d, and f.  So if I'm hearing you

25   correctly, items c and d have now been resolved?

1    **MR. RAY:**  May I have just one moment, Your Honor, to

2  consult with the subject of the motion to make sure I'm

3  speaking to the correct -- and just going from memory, I

4  believe one of those may have been Mr. Tan's individual

5  development plan.  That was produced to us.

6    **THE COURT:**  All right.  That was item d.  So that's

7  been resolved.

8    Item c was basically the appearance of the LiveLink or

9  Phillips 66 intranet homepage layout of both the research

10  library and/or the Eureka access points.

11    **MR. RAY:**  They have made a production with regard to

12  that, Your Honor.  I think they've said that they've had a

13  system change and they may not can make a complete production,

14  but they have made what they represent to be is available to

15  them at this time.  I mean, what they have is what they have.

16  I would presume that's what they would say if a formal subpoena

17  was actually issued to them.  So they have represented to me

18  that they have produced as much as they can produce in regard

19  to that request.  And so I don't presume I would receive any

20  different response through a formal subpoena.

21    **THE COURT:**  So then if I understand correctly, the

22  only item outstanding is a portion of item f.  You request any

23  confidentiality agreements -- plural -- between Phillips 66 and

24  the customers specifically applicable to the information

25  contained in items 1 and 3 in the government's supplement to

1    its bill of particulars, and you say that you've received a

2    single agreement and are simply asking whether or not that

3    single agreement is reflective of all other confidentiality

4    agreements?

5                 MR. RAY:  I think that's correct, Judge.

6                 THE COURT:  All right.  So we'll show that remaining

7    in that limited -- on that limited issue.

8           Anything from the government in that respect?  I know

9    that defense counsel was working with Phillips' outside counsel

10   on this.

11                MS. MCCORMICK:  Yes, Your Honor.  I just simply want

12   to point out -- and I think counsel referenced this but I want

13   it to be clear -- that the last communication from counsel was

14   on October 5th.  And I have had some communication with

15   Mr. Rosen's office this morning in reference to Mr. Ray's

16   October 5th letter, but if the court -- since we just received

17   this communication, we'd like an opportunity to confer.

18                THE COURT:  Sure.  Well, it sounds like we're making

19   progress.

20          The other item -- and before I get to the last item

21   that's showing outstanding on my docket, Mr. Ray made mention

22   of the first motion for issuance of subpoenas.  I don't see

23   that as pending in front of me.

24                MR. RAY:  I think that's correct, Your Honor.  There

25   is -- so the court granted that motion.  We served that

1    subpoena on the company.  I'm just simply saying in the

2    communications with Mr. Rosen at the Norton Rose firm, we take

3    issue -- and we've narrowed it down to a very significant

4    degree.  Our dispute is over a very small number of documents.

5    I really believe there are less than five that are -- that are

6    -- five or less that are in issue at this point and they relate

7    just to what has been produced to us.  And there's really two

8    categories, Judge, which is the propriety of some redactions to

9    some reports that were sent to Mr. Tan by e-mail.  Let me

10   explain to the court what -- what that relates to.

11         I, frankly, think, Judge, there may be a forthcoming

12   filing from the company about this.  They had indicated to me

13   in a letter earlier this summer that if we could not reach

14   agreement, that they would be making a filing in accordance

15   with Section 1835 of Title 18 as it relates to this issue.

16         We've narrowed the scope significantly but there are --

17   there are, I believe, four pages, Bates-numbered pages, that

18   are reports that were sent to Mr. Tan internally to the company

19   for his review.  And one of the issues we deal with, Judge, in

20   this case is the allegation that there were -- that there was

21   very narrow topics that Mr. Tan had a business reason to access

22   and that he had no business reason to access other things.

23         And these things, Judge -- we've been provided with the

24   titles themselves in a separate document, but we need to be

25   able to at trial, from our perspective, say, here are some

1    discrete examples of things that were outside his direct area

2    of assigned work that were nevertheless sent to him and that he

3    was encouraged to review.

4          And really the question now is, are we going to be able

5    to make use of these titles?  We're really probably at a

6    dispute over maybe 30 words, 40 words, something of that

7    nature.  But that is -- that is where we -- that's where we

8    have narrowed the issue after working with them over a number

9    of months about what's the production, what's been redacted,

10   why has it been redacted.

11         **THE COURT:**  All right.

12         **MR. RAY:**  So that is one of the issues.

13         And the other issue is there are a couple of additional

14   reports that Mr. Tan recalls receiving that I think would be in

15   this same general description which have not yet been produced.

16   We've done our level best from his memory to identify what they

17   are and when they were sent and they've indicated that they

18   will continue to search for that.  I don't have any reason to

19   doubt that they will.

20         But those are the issues that are still outstanding as

21   it relates to the first subpoena.

22         **THE COURT:**  Well, as to the 30 to 40 words issue,

23   I'm trusting that after 40 years of doing this, I can make

24   relatively quick work of that.

25         As to the other, I'm trying to get a sense.  Were these

1    documents that Mr. Tan believes were sent to him via computer?

2              **MR. RAY:**  Yes.

3              **THE COURT:**  So there ought to be some sort of record

4    showing that they were?

5              **MR. RAY:**  Correct.  And we've done our best over

6    time, Your Honor, to identify those by date, to the best of his

7    recollection, and by the author.  We've given the name of that

8    individual to counsel and we're trying to work through that

9    process of giving them adequate descriptions and search terms,

10   of course, proceeding from Mr. Tan's memory given that he is in

11   the custodial setting he's in.

12             **THE COURT:**  All right.

13             **MS. MCCORMICK:**  May I, Your Honor?

14             **THE COURT:**  Yes.

15             **MS. MCCORMICK:**  Your Honor, the October 5th

16   communication that I previously referenced sets out those

17   outstanding areas in which the defense has requested materials

18   from the -- from the company.  And we've talked about No. 1,

19   which were the confidentiality agreements, but Mr. Ray's most

20   recent comments are in reference to the second category and

21   then I'll speak to the third category.

22        The second category, where Mr. Ray describes there are

23   about five different documents that the defense has sought

24   copies of, and I believe copies were provided with redacted

25   titles, several weeks ago the defense agreed that those

1    redacted versions were okay.  And so this is kind of a

2    follow-up or maybe a change in position to previous

3    communications.

4         We believe the trial protective order would satisfy the

5    concerns in reference to redaction of these materials.  So if

6    they could be included among the trade secret materials that

7    would be covered by the trial protective order, that may give

8    the company the -- cover the concerns that they have in

9    reference -- and why they redacted some of the material.

10        I have not spoken to Mr. Rosen regarding that remedy;

11   however, I've spoken to in-house counsel who is present here in

12   the courtroom today.

13             THE COURT:  All right.  And would that be

14   appropriate in the defendant's view, Mr. Ray?

15             MR. RAY:  I think so, Your Honor.  These materials

16   have already been designated under the existing protective

17   order.  And so I think that given the way we laid out the trial

18   protective order, the government's accepted our most recent

19   revisions, I certainly don't -- they can -- they can designate

20   materials under that.  I don't have any issue with treating

21   them in that way so long as the jury can see and understand

22   what these titles are and we can inquire generally about them

23   on cross-examination.  That should be adequate.

24             THE COURT:  All right.  And as to the third

25   category?

1        **MS. MCCORMICK:**  As to the third category, and the

2    court just asked the question, so are these e-mails, in

3    reference to the third category.  They are, in fact, not

4    e-mails.  The way in which materials were provided when an

5    employee requested a particular document or a report, it was

6    placed in a database that's referenced as LiveLink or your --

7    and once you go log into LiveLink, which is a

8    password-protected database, then you're provided a link to the

9    document that's been provided for your access.  So there are no

10   e-mails.

11       **THE COURT:**  Okay.  But that's traceable?  We know

12   through LiveLink which documents he accessed or --

13       **MS. MCCORMICK:**  We --

14       **THE COURT:**  -- that were at least made available for

15   his access?

16       **MS. MCCORMICK:**  We know based on the request, and

17   the request was very specific as to the name of the individual,

18   the date, and in reference to a trip that involved the American

19   Chemical Society.  The company has searched for reports fitting

20   that description and there are none.  As well, they've reached

21   out to the individual referenced by the defense and inquired as

22   to whether or not he ever made a trip in reference to that

23   organization and he confirmed that he had not.

24       **THE COURT:**  All right.  But can it be approached a

25   different way to determine on the history of that database

1    whether any documents were made available to Mr. Tan that fits

2    that description?

3              **MS. MCCORMICK:**   I think the answer to that is yes.

4    My understanding is that they made the search initially -- they

5    searched the database first, didn't find anything, then they

6    reached out to the individual who confirmed he'd never made

7    that trip.

8              **THE COURT:**   All right.   The third category that I

9    had mentioned at the outset has to do with the defendant's

10   alternative motion in limine regarding statements of Xiamen

11   Tungsten Company, Ltd.   That motion's found at docket No. 96

12   with a response at docket No. 104 and that was the last

13   outstanding motion.   What's the status of that?

14             **MR. RAY:**   Judge, we continue to work diligently to

15   get that deposition scheduled.   Let me just give the court a

16   little bit of background on where those efforts have been

17   because we've been -- and I've been in regular communication

18   with counsel to Xiamen Tungsten Company in the nation of China.

19             At the last hearing, the government --

20             **THE COURT:**   Now, this is a little bit different.

21   Actually, you're talking about my fourth category about

22   discovery.   I'm focused on -- and I know there's some overlap

23   here -- but I'm talking about your alternative motion in limine

24   in which you seek to exclude at trial all statements of XTC,

25   including draft documents and e-mail attachments.

1        MR. RAY:  I would just say I continue to believe

2   that -- and the belief has even been furthered by

3   communications I've had with them since the last time we were

4   here -- that that motion will be rendered moot by the

5   deposition's occurrence.  That's what I believe about that,

6   Judge.  Is that when we have someone there from the company

7   that has personal knowledge of these documents and can speak to

8   the documents and both parties have the opportunity to examine

9   those witnesses on those topics, that those evidentiary issues

10  will thereby be rendered moot.

11       THE COURT:  All right.  Are you saying that because

12  you think the depositions will show the statements were not as

13  perceived by the FBI or because Mr. Tan did not adoptively

14  adopt those statements?

15       MR. RAY:  More the former but perhaps both to some

16  degree.  But I certainly think that more that when these --

17  when these individuals can explain the meaning of these

18  provisions, that they will by and large be not as they were

19  perceived by the FBI.  And certainly the government can have

20  the opportunity to inquire as fully as they wish of those

21  involved in the making of them as to their content.

22       THE COURT:  All right.  Now, there's no question

23  that Mr. Tan signed those documents?

24       MR. RAY:  There was a single document, Your Honor,

25  yes, that he -- that was an offer letter.  And yes, he signed

1    that, I don't disagree with that, but the question is just what

2    was meant by the parties to it.

3              THE COURT:  All right.  Got it.  Got it.  So it

4    really goes to the meaning of the statements contained therein?

5              MR. RAY:  I think that's right.  As it relates, Your

6    Honor -- I'm not sure that every single statement in the

7    entirety of the government's production was adopted by Mr. Tan.

8    But as it relates to that single letter, Your Honor, I do

9    believe that he did, in fact, sign that.

10             THE COURT:  All right.  So now going to the fourth

11   category that I had anticipated in terms of that discovery.

12             MR. RAY:  And my apologies, Your Honor, for being

13   out of order.

14             THE COURT:  No, not at all.

15             MR. RAY:  The government -- so obviously, Your

16   Honor, to use a deposition at trial, the adverse party need

17   have had notice and an opportunity and motive for

18   cross-examination.  The government has indicated to us that

19   they need to use a particular interpreter provided by the

20   Department of Justice as a part of that.  That is what it is.

21   The government indicated to us at the last hearing that the

22   interpreter was not available until the 26th or 27th of

23   September.  I very promptly reached out to counsel for the

24   company and they said that did not work for the deponents and

25   we began looking at alternative dates.

1        Now, here's what we've had -- there's a little bit of a

2   unique issue, Your Honor, which I learned about in the past few

3   weeks, which apparently is for the last week apparently the

4   whole nation of China has been on essentially a nationwide

5   holiday.  And so from the 1st through the 7th of October was

6   just totally impossible is my understanding.

7        I will say that the counsel for that company, an

8   outside law firm, was still reasonably responsive to me during

9   that period.  But the people at the actual company they said

10  apparently the folks go home to different parts of the country

11  and it's just -- I don't know.  A week off for the whole

12  country sounds pretty extraordinary to me.  But be that as it

13  may --

14              **THE COURT:**  But the lawyers continued to work?

15              **MR. RAY:**  Apparently so.  Maybe it's not too

16  different in that regard than it might be here.

17        So we've began working on that, Judge.  I've been told

18  by Ms. McCormick last Friday that from the perspective of the

19  interpreter through the Department of Justice, they can do it

20  on any Tuesday, Wednesday, or Thursday, knowing, Your Honor, we

21  have another bit of an unique issue here which is doing it in

22  video conference there.  First thing in the morning there is

23  actually pretty much last thing in the evening here.

24        So they had indicated, Your Honor, availability at the

25  end of this week, but Ms. McCormick says that the interpreter

1    from the Department of Justice apparently cannot make it at the

2    end of this week.  And so I believe we have -- I've heard from

3    them and indicated that the 23rd of October may, in fact,

4    finally work.  I believe that works for Ms. McCormick and for

5    -- for the interpreter.  And if that won't work, we will find

6    some other Tuesday, Wednesday, or Thursday in the balance of

7    this month on which that can occur.  And I think from our

8    perspective that is a -- that is a decent summary of where that

9    issue stands.  I certainly don't want to purport to speak on

10   Ms. McCormick's behalf.

11        **THE COURT:**  Thank you, sir.  Ms. McCormick.  And if

12   you're in trial with me on the 23rd, I may let you out a few

13   minutes early.

14        **MS. MCCORMICK:**  I just mentioned that to my

15   co-counsel.  I just wanted to clarify a couple of things, Your

16   Honor.

17        While the United States is working diligently with the

18   defense to schedule and facilitate the depositions, we are not

19   agreeing or waiving our objection to admissibility of the

20   deposition testimony for trial.  I think that's still an issue

21   to be determined but we are working closely with counsel.

22        One of the difficulties is the ability to travel not on

23   a -- at the beginning of the week.  Most of the departments

24   designate a travel date, and so we did ask counsel for

25   scheduling on a Tuesday, Wednesday, or Thursday to assist us in

1    facilitating the travel of the linguist who will be traveling

2    from out of state.

3         I think the series of events or communications that

4    counsel provided is not inaccurate.  At our previous pretrial,

5    I represented to the court that we would attempt to schedule

6    the depositions on the 25th or 26th of September; that didn't

7    work for the company.  So it's just been us trying to find a

8    date certain that would work for both parties and for the

9    linguist to travel in and now also for co-counsel on behalf of

10   the United States to also participate.  It sounds like we might

11   have a date certain.

12        **THE COURT:**  Good, good.  All right.  Karen,

13   currently we're set for trial on what date?

14        **DEPUTY COURT CLERK:**  October 21st.

15        **MR. RAY:**  And if I could just very briefly, Your

16   Honor, just something else that is relevant to this.

17        Our subject-matter expert on the subject matter of

18   these alleged secret materials, Jack Adams, actually had a

19   surgery late last month and he's not yet certain that he could

20   make the 21st in any event.  He has told me that he will be

21   free of medication and he certainly will be available in the

22   month of November.

23        I had had, Your Honor, a discussion with counsel, both

24   Ms. McCormick and Mr. McKenzie, prior to court commencing and

25   they had raised -- and we certainly agree -- I don't know if

1    it's possible that we could have any type of special setting in

2    this case, perhaps a little earlier than the normal docket,

3    given the impendency of the Thanksgiving holiday.  I don't

4    think anyone wants us to approach so closely that we run into

5    having the trial spill over after that.  They raised that.

6    Frankly, that's preferable to us if it's possible with the

7    court.  If it's not, then be that as it may, we will whatever

8    the court will accommodate.

9             THE COURT:  We'll, I'll take a look at my calendar.

10   I mean, typically we're booked up until the first day of the

11   trial week.

12            Karen, do we have with the week before Thanksgiving and

13   then the three days before Thanksgiving?  Or is it only the

14   three days with Thanksgiving in between that and our next trial

15   week?

16            DEPUTY COURT CLERK:  The 18th is the week before

17   Thanksgiving and then we have the three days of Thanksgiving.

18            THE COURT:  All right.  So we begin on the 18th?

19            DEPUTY COURT CLERK:  Correct.

20            THE COURT:  So we have eight days that we could try

21   the case.  How long do we expect this case to be tried?

22            MS. MCCORMICK:  Your Honor, in looking at the

23   government's case in chief, we think our case would take about

24   six days.

25            THE COURT:  All right.  You all will understand that

1   as a state trial judge who has to get re-elected, you don't

2   like to have a jury in the box on the Wednesday before

3   Thanksgiving.  You're not a very popular judge when you do

4   that.  Fortunately, I don't have to worry about that so much

5   here except that people start paying less attention on the

6   Wednesday before Thanksgiving, especially if you have people

7   who have cooking duties, you know, cooking turkeys, that sort

8   of thing.  People like to get out.  So the Wednesday before

9   Thanksgiving is not a great day to be trying lawsuits.

10          So that leaves us really with seven hard days.  Now, I

11  don't have a particular problem with continuing the jury trial

12  to the following Monday --

13          **MS. MCCORMICK:**  We were actually --

14          **THE COURT:**  -- personally.

15          **MS. MCCORMICK:**  I'm sorry to interrupt, Your Honor.

16          **THE COURT:**  Yeah, go ahead.

17          **MS. MCCORMICK:**  But the government was actually

18  proposing or discussing with counsel beginning on

19  November 12th, which is that Tuesday right after Veterans Day.

20          **THE COURT:**  Let me see what my docket --

21          **DEPUTY COURT CLERK:**  I mean, we have a few

22  sentencings set that week.

23          **MR. RAY:**  One of them is my client, Your Honor.

24  He's had a stipulated 11(c)(1)(C) agreement to five years and

25  so there certainly would be no prejudice to him.  That's

1   another matter I have.  I just -- and I understand the court

2   may have a panoply of other things.  But there certainly would

3   be no prejudice to Mr. Marin to setting that sentencing on a

4   different day.

5           MS. MCCORMICK:  Well, I'm also the prosecutor in

6   that case.  So --

7           MR. RAY:  Understood.  Here we all are; right?

8           THE COURT:  What else?

9           DEPUTY COURT CLERK:  That week we have a total of

10  five sentencings set at this point.

11          THE COURT:  Do we have anything other than

12  sentencings that week?

13          DEPUTY COURT CLERK:  No, we do not.  And also the

14  week of the 26th and 27th of November prior to Thanksgiving are

15  the days we had given to the preliminary injunction hearing.

16          THE COURT:  Oh, that Monday and Tuesday?

17          DEPUTY COURT CLERK:  That Tuesday and Wednesday.

18          THE COURT:  Tuesday and Wednesday.

19          DEPUTY COURT CLERK:  It hasn't been -- yes.

20          THE COURT:  All right.  Well, so we could juggle

21  some of those sentencings to the Monday before Thanksgiving,

22  which is the, what, 25th?

23          DEPUTY COURT CLERK:  Correct.

24          THE COURT:  Be difficult to put five of them on the

25  same day, or six, but we could move some of them then.  It

1    looks like you may be in luck.

2         Karen, do you see any reason why we couldn't do that?

3         **DEPUTY COURT CLERK:**  No, I do not.  I mean, we can

4    get those five moved around.  That's fine.

5         **THE COURT:**  Okay.  Let's do that then.  We'll give

6    you the special setting on November 12th.  Frankly, this

7    doesn't happen very often.  So --

8         **MS. MCCORMICK:**  Thank you, Your Honor.

9         **MR. RAY:**  Thank you, Your Honor.

10        **THE COURT:**  I think that's much better than going

11   the week of Thanksgiving.

12        **MR. RAY:**  We do too, Judge.  Frankly, the court's

13   concerns that were identified are concerns that Mr. Tan and I

14   had as well so we're grateful to be able to accommodate it

15   earlier.  And I, frankly, believe, Judge, if we start on the

16   12th, I don't see any way we couldn't get the case to the jury

17   before that week that ends the 18th.  Our case is not going to

18   be more than a couple of days, I don't believe.

19        **THE COURT:**  Right.  I mean, we'll get it to the jury

20   by Wednesday, it appears.

21        All right.  Is there anything else that we should

22   address here today?

23        **MS. MCCORMICK:**  Well, Your Honor, the court had

24   specially set a couple of deadlines and pretrials.  Will those

25   be reset in light of the court entertaining the special setting

1    for the trial?

2              THE COURT:  And which deadlines do you speak of?

3              MS. MCCORMICK:  In particular, there is a deadline,

4    I believe, this week on Wednesday for filing of parties' trial

5    briefs, proposed voir dire, and instructions.

6              THE COURT:  We can certainly move that.

7              DEPUTY COURT CLERK:  Correct.

8              THE COURT:  So that was ten days before trial or a

9    week and a half before trial?

10             MS. MCCORMICK:  Yes, Your Honor.

11             THE COURT:  Karen, let's just move that to a

12   corresponding day before the 12th of November.

13             DEPUTY COURT CLERK:  Okay.  Like November 1st, which

14   is a Friday?

15             THE COURT:  Well --

16             MR. RAY:  Perfect.

17             DEPUTY COURT CLERK:  Or do you want to do earlier

18   than that?

19             THE COURT:  Currently, they're do next Wednesday?

20             DEPUTY COURT CLERK:  The 9th, this Wednesday.

21             THE COURT:  This Wednesday?

22             DEPUTY COURT CLERK:  Correct.

23             THE COURT:  So let's move it -- rather than having

24   it on the Friday, let's have it that Wednesday or Thursday.

25             DEPUTY COURT CLERK:  Oh.  October 30th is a

1    Wednesday.

2              THE COURT:  Yes, please.

3              MR. RAY:  That's perfect, Judge.  Thank you.

4              THE COURT:  All right.  And any other dates?

5              MS. MCCORMICK:  I believe that's it, Your Honor.

6              THE COURT:  All right.  Anything else, Mr. Ray?

7              MR. RAY:  I don't believe so, Your Honor.  Thank

8    you.

9              THE COURT:  Well, thank you both for your

10   professionalism here.  It's really a model of how to address a

11   fairly complicated criminal matter.  So I thank you both for it

12   as officers of the court.

13             Anything further from the government?

14             MS. MCCORMICK:  No, Your Honor.

15             THE COURT:  Thank you very much.  If there's nothing

16   else, we are adjourned and the defendant's remanded to the

17   custody of the U.S. Marshal.  Thank you.

18                  *(The proceedings were concluded)*

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

4          I, Brian P. Neil, a Certified Court Reporter for the

5   Northern District of Oklahoma, do hereby certify that the

6   foregoing is a true and accurate transcription of my

7   stenographic notes and is a true record of the proceedings held

8   in above-captioned case.

9

10          I further certify that I am not employed by or related

11   to any party to this action by blood or marriage and that I am

12   in no way interested in the outcome of this matter.

13

14          In witness whereof, I have hereunto set my hand this

15   24th day of October 2019.

16

17                                      s/ Brian P. Neil

18                          _____

19                             Brian P. Neil, RMR-CRR
                             United States Court Reporter

20

21

22

23

24

25